JAMES WELSH *et al.,* Plaintiffs in Error, v. THE PEOPLE.

ERROR TO RECORDER'S COURT, CITY OF CHICAGO.

If the owner of goods, alleged to have been stolen, voluntarily parts with the possession and title, then neither the taking or conversion is felonious. But if he parts with the possession, expecting that the identical thing will be returned, or that it shall be disposed of on his account, or in a particular way, then the thing may be feloniously converted, and the bailee be guilty of a larceny.

The question in such case is, did the owner *voluntarily* part with the legal title to the thing, and did it become vested in the accused?

After the case has been declared closed by both parties, it is discretionary with the court, and not assignable for error, whether the case shall be again opened, and further evidence offered to the jury.

THE defendants were indicted for larceny, tried and convicted, at September term, 1855, before R. S. WILSON, in the Recorder's Court of the city of Chicago. They were sentenced to three years' confinement in the penitentiary. The accused, were practising upon Hall, what is known as the ball and safe game, and borrowed of him the money, to wager. Hall was the principal witness on the trial.

M. T. BURGESS, for Plaintiffs in Error.

W. H. L. Wallace, District Attorney, for the People.

CATON, J. The question now again presented, of the right of the court before which this conviction took place, to try the prisoners, was carefully considered and decided in the case of *Ex parte Welsh, ante,* 161, and we do not think it necessary again to discuss the subject.

Where, as in this case, the alleged larceny is perpetrated by obtaining the possession of the goods by the voluntary act of the owner, under the influence of false pretences and fraud, when the cases are carefully examined and well understood, there is no real difficulty in deducing the correct rule, by which to determine, whether the act was a larceny and felonious, or a mere cheat and a swindle. The rule is plainly this: if the owner of the goods alleged to have been stolen, parts with both the possession and the title to the goods to the alleged thief, then neither the taking or the conversion is felonious. It can but amount to a fraud. It is obtaining goods under false pretences. If, however, the owner parts with the possession voluntarily, but does not part with the title, expecting and intending that the same thing shall be returned to him, or that it shall be disposed of on his account, or in a particular way as directed or agreed

upon, for his benefit, then the goods may be feloniously converted by the bailee, so as to relate back and make the taking and conversion a larceny. The pointed inquiry in such a case must always arise, did the owner part with the title to the thing, and was the legal title vested in the prisoner? If so, he was not guilty of a larceny. This distinction has not, in all cases, where the question has arisen for adjudication been clearly pointed out. The question has been sometimes stated in more general terms, as, did the prisoner obtain the goods with a felonious intent, or feloniously? If so, he is guilty of larceny. In this general expression the distinction, however, is still preserved; for if the title was obtained with the possession, the taking and conversion could not be felonious, although fraudulent and with the design to cheat the former owner out of them. Hence, however, has arisen much of the apparent confusion on this subject.

A critical examination of the instructions given and refused by the court, is necessary to determine whether the law as thus settled was violated. The first instruction asked for the prisoner, was as follows: "The jury are instructed that if they believe from the evidence that the money in the indictment mentioned was loaned by the witness, Hall, to the defendant, Kinney, for the purpose of enabling Kinney to bet with Welsh, then such taking of said money and carrying it away does not amount to larceny and the jury should acquit the defendants, even though such loan of the money was obtained by false and fraudulent pretences, and with the design to cheat and defraud the said Hall out of the same." This instruction the court refused to give without a qualification which will be subsequently noticed. Does the instruction as drawn present the law of the case properly? Clearly not. It assumes, what is expressed in more distinct terms in the fourth instruction, which was refused. That instruction is this: "That although larceny may be committed by stealing or otherwise converting to the use of the borrower, a chattel, which has been loaned to him, yet such is not the case when the property loaned is money." This assumes, that under no circumstances can money be loaned without the absolute legal title passing to the borrower. This certainly is not the law. Money as well as chattels, may be loaned for a specific purpose, and to be returned in the same identical pieces. Money may be, and frequently is, loaned for the purpose of making a formal tender, where there is no expectation of its being accepted, and where it is agreed, that in case unexpectedly the party should offer to accept it, the tender shall be withdrawn and the same money returned. In such a case, as between the lender and borrower at least, the title to the money does not pass, however it might be as to the third party who should accept the

tender, the borrower not having withdrawn it as agreed. And so in a thousand other instances money may be loaned for a specific purpose, which when the purpose is subserved the identical money is to be returned. In all such cases, the absolute title does not pass, but only the right to its temporary use, any more than would the title to a horse or other chattel, which had been loaned for a time and then to be returned. The question, whether the general or only a special title passes, must always be determined by the inquiry whether it was the intention of the parties that the same identical thing is to be returned or only its equivalent or value, in something else. Nor will the legal effect of the transaction be different, although the lender be indifferent, whether the same thing be returned or its value in some other thing or money. The question is, what was the intention of the parties at the time?—what did they agree to? not what would they have agreed to, had something else been proposed.

By the first instruction, the court is asked to tell the jury, that if they believe the prosecutor loaned the money to Kinney, to be bet with Welsh, there could be no larceny. This was assuming that the absolute title passed if such a loan was made. Such was not necessarily the case. If it was loaned under the absolute assurance that Kinney must win and that the same money should be returned to him, then it was loaned for that specific purpose, and he parted with the temporary use of the money only, and not with the absolute title. If, however, he loaned it, expecting the money might be lost by the bet, and if lost, that it should be repaid in other money, then he parted with the absolute title to the money when he loaned it, and there could be no felonious taking, although it was obtained by fraud and deceit. The first and fourth instructions were properly refused.

The second instruction is still more objectionable. It is this: "That to constitute the crime of larceny there must be a taking of the property against the will of the owner; therefore, in this case, if the taking of the property from Hall, was not against his will, the jury should acquit the defendants." It is a well settled rule that where a party obtains possession of goods by fraud and deceit, not with the intention of returning them, but with the design of appropriating them and depriving the owner of them, and of all remedy for their loss, and does so appropriate or dispose of them, that is as much a larceny as if the possession had been obtained against the will of the owner. Indeed in many adjudged cases, the rule has been enforced with less restrictions than I have here stated, and possibly the true rule may be found to be broader than I have stated it. But this is sufficient to show that the instruction as asked is not the law. I shall only

refer to the familiar instance, of a party hiring a horse, for a specified service, with the intention at the time of running away with or selling him, and who executes such intention. I know of but one single case in this country or in England, which does not hold this to be larceny. The third instruction asked for the prisoners, was the same in principle as the first, and was obnoxious to the same objection.

I now come to the instruction given by the court as a qualification to those asked for the prisoners. It is this: "If the jury believed from the evidence that all three of the defendants fraudulently conspired together, and agreed to practice a fraud on the witness, Hall, to induce him to deliver his money to the defendant, Kinney, for the purpose of his (Kinney's) making a bet with the defendant, Welsh, with the intent to feloniously take and appropriate the money of Hall, to the joint use of the three defendants, and if such delivery to Kinney was procured by means of such fraud, and with such intent to feloniously take and appropriate, it was no such delivery in law as would legally pass the possession of property to him." While this instruction is strictly and technically correct, I could wish that the court had been more particular to point out to the jury the distinction, which I have attempted to explain, as to whether it was the intention of the parties to transfer the absolute title to the money by the transaction. The instruction however is nearly in the language of many of the reported cases. It applies to the appropriation of the money of Hall and could have no application, if the money had ceased to be Hall's, and become Kinney's, by the loan. Nor could there be the felonious intent required in the instruction, if the title to the money had absolutely passed to Kinney by the transaction, for Kinney could have no felonious intent against Hall, in reference to money, which had become his, by the act of delivery to him and the intent with which the delivery was made. The instruction is in fact hypothetical, and only became operative in case the money still continued Hall's. I repeat a regret that the distinction referred to was not more clearly pointed out to the jury, and if the evidence which is sent up in the record convinced us that the title to the money had been, in fact, transferred to Kinney by the loser, we might possibly be justified in inferring that the jury were misled in some way, as to the principle of law by which they should have been governed, and grant a new trial.

The first instruction asked on the part of the prosecution and given, is much like the one just considered, which was given by the court, and what has been said of the one applies equally to the other.

The second and last instruction given for the people does

clearly point out the distinction between a mere temporary loan and an absolute transfer of title, and is the only one in the whole series, which does, to my mind, present the distinct question upon which I think the whole case properly depended. That instruction was right.

Another objection of a minor character, it may be proper to notice. After both parties declared the case closed, and the case had been opened to the jury by the people's counsel, they were permitted to call and examine another witness in the cause. It is enough to say that this has been always held a matter of discretion with the court, and not assignable for error. Without such a discretionary power, sometimes the greatest injustice would be done. Courts will always exercise this discretion with caution, and to promote the ends of justice, and guard against surprise to the opposite party.

The prisoners' counsel asked the prosecutor this question: "Have you stated that you expected to receive a part of the money if the bet was won?" The court refused to allow this to be answered, upon the ground that it was necessary to call the attention of the witness to the time, and place, and to whom the declaration was made. The restriction which the court placed upon the examination was proper, as well settled by authority and sustained by reason. The objection taken was properly sustained. An objection was also sustained to this question put to the prosecutor: "Did it make any difference to you whether you got the identical money which you lent him back again, or other money?" Had I been trying the case, I think I should have allowed the question to have been answered, and yet, strictly, it was not pertinent. The inquiry for the jury was, whether the understanding and intention was, that Hall should have the same money back, and not whether it was a matter of any moment to him, whether he got the same money back, or other money as good?

On the whole we are of opinion that the judgment must be affirmed.

*Judgment affirmed.*