## STATE *v.* DECATUR BRYANT.

If A borrow of B a horse, with the felonious intent to deprive B of it, and to appropriate it to his own use, and does so, he is guilty of larceny. If A borrow of B twenty dollars with the same intent, it is not larceny, but fraud. But where, upon an indictment for the larceny of money, the defence relied upon was, that the prosecutor had voluntarily loaned the money to the defendant, and the transaction alleged to be a loan was left to the jury under the charge of the court: "that if the jury found that the borrowing was in good faith, and the money was voluntarily loaned, they should acquit the prisoner; but if the act of the defendant was but a trick or contrivance to get possession of the prosecutor's money, and the defendant borrowed the same with the intent at the time to steal it, it would be larceny," and the jury returned a verdict of guilty: *Held*, that there was no error.

INDICTMENT for LARCENY, tried before *Schenck, J.*, and a jury at Fall Term, 1875, of MECKLENBURG Superior Court.

The evidence in the case was substantially as follows :

One John M. Rankin, the prosecutor, came from the county of Lincoln to the city of Charlotte, and sold his cotton, for which he received two hundred dollars in legal tender notes of the United States. One hundred and eighty dollars of this amount, consisting of nine twenty dollar bills he rolled up in a close package and put in his pocket book. He started home about twelve o'clock, in his wagon, and the defendant, a colored man, overtook him about a half mile from town, and upon his representation that he was just from Monroe, was tired, and had to be at Yates' Factory that night, which was about eighteen miles off, he was permitted to ride. The defendant soon presented some cards, and endeavored to get the prosecutor, who was a feeble old man, and very nervous, to bet on the cards, and draw one, which he refused to do. The wagon then came to the edge of a thicket, when one Aiken, another colored man, and a co-defendant in this indictment

came up and addressing the prosecutor, asked him for some tobacco, which the prosecutor refused to give him.

Bryant then said to Aiken, " Stranger, won't you draw a card ?" Aiken then drew twice, but did not draw the prize card. Bryant then said, " Stranger, I'll bet you this old man in the wagon, can draw the prize card," and desired the prosecutor to bet, which he refused to do. Bryant then said he would bet, and the prosecutor must lend him twenty dollars and draw for him. The prosecutor then took out his pocket book and the defendant then put his arms around him and drew him around to the other side of the wagon, from where the prosecutor's son and Aiken were. At this time, Segrave, a white man, and also a defendant, came up on the other side of the wagon, and Bryant, addressing him said, " Hello ! stranger, I want you to hold stakes." Then turning to the prosecutor, he said, " Old gentleman, you are very feeble, I will help you," and slipped one of his hands under the pocket book and unrolled the money, a part of which the prosecutor felt go out of his hand. When Bryant got the money he gave one twenty dollar bill to Segrave, to hold, and asked the prosecutor to draw a card for him, which the prosecutor did. Bryant then said, that was not the right card, and Segrave gave Aiken the money. Segrave, Aiken and Bryant then made off. There were five twenty dollar bills taken, instead of one twenty dollar bill. The prosecutor did not discover this until the next day. The prosecutor swore that he never consented to lend the twenty dollar bill to Bryant, but that he did not resist his taking it. It was in evidence that Aiken and Bryant fled to Rock Hill, S. C., and were arrested and brought back to Charlotte. It was also in evidence that Bryant, Aiken and Segrave lived in Charlotte and knew each other. That Bryant and Segrave lived in one hundred and fifty yards of each other, and that Aiken lived very near to Segrave, in that part of the city known as " Five Points." That on the morning of the day on which the occurrence took place, all the defen-

dants were seen lying down together, near a spring, about three hundred yards from where the alleged larceny was committed. That the defendants Bryant and Aiken were seen passing backwards and forwards on the road that morning, and that Aiken and Segrave had been seen together, often on the road.

The defendants's counsel asked the court to charge the jury:

1. That if the jury believed that the prosecutor, Rankin, loaned the twenty dollars to Bryant, to put up as stakes in the bet with Aiken, this would not be larceny.

2. If the prosecutor permitted Bryant to take the money without objection; that this amounted to consent on the part of the prosecutor, that he could take the money.

The court, after summing up the testimony and defining what larceny was, and what constituted a felonious intent, to which there was no objection, stated that larceny might be committed by taking property directly from another's possession, or if one gets possession of another's goods by trick or contrivance, and if the act be done in such a way as to show a felonious intent to evade the law, he would be guilty of larceny. That it was true, if one voluntarily lends money to another, or permits him, knowingly, to take it without objection, it would not be larceny. If the borrowing was in good faith, and if you believe this money was so borrowed, the defendant would not be guilty. But if the getting on the wagon, exhibition of the cards, meeting of the parties, and the other acts of the defendants was a trick or contrivance between the parties, to get possession of the prosecutor's money, and Bryant borrowed the money in this way, with the intent at the time to steal it, it would be larceny; and if the other defendants were present aiding and abetting, they are guilty.

The court also used the following language: "This is not an ordinary case of larceny, with which the defendants are charged. The State alleges that it was committed by a trick

or contrivance." The court further instructed the jury, that it was the duty of the State fully to satisfy their minds of the allegations contained in the bill of indictment, before they could convict.

The jury rendered a verdict of guilty as to all of the defendants. Whereupon the defendant, Bryant, moved for a new trial, on the ground that the court erred in refusing the special instruction prayed for, and on the further ground that the court, in its charge to the jury, intimated an opinion that a larceny had been committed.

The motion was overruled. Judgment and appeal.

*Jones & Johnston*, for the prisoner.
*Attorney General Hargrove*, for the State.

READE J. Larceny is so subtle that it is difficult to say ; it is this, and nothing else ; or this is it, and nothing else. It is liable to be confounded with fraud and trespass.

If A borrow a horse from B with the felonious intent to deprive B of it, and to appropriate it to his own use, and does so, A is guilty of larceny. But if A borrow of B twenty dollars with the same intent, it is not larceny, but it is fraud

This distinction is settled by the authorities. It is satisfactorily treated in *Welsh* v. *People*, 17 Ill. Rep. 339, and the cases there cited.

The reason for the distinction is, that in lending the horse, the owner expected the return of the same horse and did not part with the *title ;* the property remained in him. And therefore, when the borrower, subsequently, feloniously converted the horse, it related back, and was a theft from the beginning. But when B loaned the *money* he parted with the *title*, and did not expect the return of the same money, (unless loaned with that express understanding) but made it a *debt*. which the borrower might pay with any other money. And therefore,

this was fraud and not larceny. That distinction is the defence relied on in this case..

It is insisted that the prosecutor loaned the defendant the twenty dollar bill, and thereby *voluntary* parted with the *possession* expecting it to be returned in kind; but with the *title*, and that the defendant having by contract acquired the *title* to the bill, as well as the possession, did not by what subsequently passed, steal, take and carry away the *property of the prosecutor.*

It must be conceded that if the prosecutor *loaned* the defendant the bill, then the defendant is not guilty of *larceny,* of whatever else he may be guilty. But put the most liberal construction upon the whole transaction for the defendant, and there is not a single feature in it that looks like a contract, nor a particle of testimony that tends to show it, and but for the fact that juries are very safe judges of such matters, it would seem to be trifling with the administration of justice to have left the question to the jury. His Honor might very well have told the jury that there was *no* evidence of any contract of lending.

The prosecutor was a feeble, nervous old man, going home from market in his wagon with a considerable amount of money. It is natural that that fact should have made him timid. The defendant, a colored man, overtakes him, and is permitted to get into his wagon and ride, pulls out cards and proposes to gamble, which the old man refused to do. That was calculated to alarm him. They get to a thicket, when another colored man, Aiken, comes up and asks the old man for tobacco, which he refuses to give him. The defendant addresses Aiken as " stranger," and proposes to gamble with him, and they do gamble. Defendant then says, " stranger, I will bet you this old man in the wagon can draw the prize card." And he proposes for the old man to bet, which he refuses to do. The defendant then says to the old man, " you must lend me twenty dollars and draw for me." The

old man takes out his pocket book, but does not show his money. The defendant put his arms around him and draws, him around to the other side of the wagon. At this time a third man, white, comes up and defendant says, " Hallo, stranger, I want you to hold stakes." He then takes hold of the old man's pocket book, which the old man holds on to, unrolls the money, the old man feels some of it go out of his hands ; he does not know how much ; (it turns out to be five. twenty dollar bills ;) the defendant hands one twenty dollar bill to the third man to hold ; tells the old man to draw a card for him, which he does ; defendant pretends to have lost the bet; directs the stake holder to hand over the money to Aiken, and they all three make off together and leave the old man in the road. The old man was examined as a witness and swore that he did not lend the money, but he did not resist the taking.

That was the transaction·; those were the facts. Now when the facts are ascertained, whether they amount to a contract is usually a question for the court. And yet in the greatest liberality to the defendant, it was left to the jury to say whether the old man did not *voluntarily lend* his money to those three highwaymen, all of whom were strangers, who. had stopped him on the highway in a thicket, and by unmistakable conduct showed that they meant to have his money. When he refused to bet or play, and the defendant said to him, " Well, if you won't bet you must lend me the money," if he had handed him the money it could not be tortured into a *voluntary* loan. But he did not do that. He took out his. pocket book, but held on to it, showing· his unwillingness to part with it as long as it was safe to keep it. But the defendant took him in his arms and carried him to the other side of the wagon, (showing how completely the old man was at his mercy,) took hold of the pocket book and took out the money,, the old man feeling it pass out of his hand. And because the old man did not resist him, putting his life in peril, it is left,

9

to the jury to say whether it was not a *voluntary loan.* And that too, when the uncontradicted testimony of the old man is, that it was not a loan but a taking. It is not pretended that there was any conflicting testimony to be reconciled; but it is insisted that from the undisputed facts a loan is implied by the law or might be found by the jury. But we are of the opinion that the undisputed facts make a plain case of larceny.

There is no error. This will be certified.

PER CURIAM.                                   Judgment affirmed.