JOHN T. JOHNSON

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon January 22, 1885.*

113   99
123  347

113   99
137  196

113   99
52a 369

113   99
158  662

113   99
67a 345

113   99
173  470

113   99
175   34

113   99
80a   44

113      99
89a ¹278

113      99
110a ¹262

113      99
d209 ¹217.

1. INDICTMENT—*for statutory offences—requisites.* An indictment for a mere statutory offence must be framed upon the statute, and this fact must distinctly appear upon the face of the indictment itself. That it may so appear, the pleader must either charge the offence in the language of the statute, or specifically set forth the facts constituting the same.

2. Where the statute creating a new offence does not describe the act or acts constituting such offence, the pleader is bound to set them forth specifically.

3. SAME—*of the rule in respect to larceny by bailee, under the statute.* Section 170 of the Criminal Code, making a conversion of property by a person to whom it has been entrusted, a larceny, is not intended to apply to any case which is a larceny at common law; and all cases falling within it are mere statutory larcenies, and are subject to the rule of pleading applicable to statutory offences.

4. LARCENY—*at common law—in what cases.* At the common law there are three cases in which a conviction for larceny may be sustained when the apparent possession is in the accused: First, where the accused has the mere custody of the property, as contradistinguished from possession, as in the case of servants and the like; second, where he obtains the custody and apparent possession by means of fraud, or with the present purpose to steal the property; and third, where one having acquired possession by a valid contract of bailment, which is afterward terminated by some tortious act of the bailee, or otherwise, whereby the possession reverts to the owner, leaving the custody, merely, with the former, and he feloniously converts the property to his own use.

5. SAME—*larceny at common law defined.* Larceny at the common law is defined to be "the felonious taking and carrying away of the personal goods or property of another." Every larceny at common law includes a trespass to personal property, and no one lawfully in the possession of goods can commit a larceny of them at common law.

6. SAME—*possession of goods, as distinguished from mere custody.* Goods on the premises of the owner, to be used by himself and family, including his servants, are always deemed to be in the possession of the owner, although the ordinary duties of the servants and other members of the household require them, from time to time, to handle, occupy or use them, or even to sell or dispose of them. So where chairs, beds, etc., are occupied by a guest, whether in a hotel or private family, or where plates or other articles

are used by one at the table of another, or where the owner delivers a chattel to another to be examined or used for some temporary purpose in the presence of the owner, the same rule applies. In all such cases the possession remains with the owner, and those having the temporary use or occupancy are deemed to have only the mere custody, and a felonious taking of the same by them is larceny.

7. But when the owner of a chattel delivers it to one, other than a mere servant, in trust, upon a contract that the latter will faithfully execute the trust, the rule is different. In such case, which is an ordinary bailment, the possession as well as the custody passes to the bailee with its delivery, and while the bailment exists the bailee can not, by the common law, commit a larceny of the chattels.

8. SAME—*in case the possession is obtained by fraud.* Where the possession is not fairly and honestly obtained, as, when there is an original purpose on the part of the bailee to steal the property, and the bailment is a mere pretence on his part to hide a felonious intent, the possession will not pass; and if the property is subsequently converted in pursuance of such criminal purpose, it will be larceny, by the common law.

9. SAME—*where owner parts with the possession, and intends also to part with the title.* Where the owner intends to part both with the title and possession, and the property is delivered in pursuance of such intention, the person receiving it can not be convicted of larceny, although the transfer was induced by the fraud of the latter, and with a purpose to steal the property.

10. SAME—*larceny by bailee—at common law.* Where the possession has passed, under a valid bailment, to the bailee, if he is guilty of any tortious act in respect to the subject of the bailment whereby the contract is terminated, the possession will revert back to the bailor, although the actual custody remains in the bailee; and if the latter then appropriates the property to his own use with intent to steal it, he will be guilty of larceny at common law.

11. SAME—*larceny by bailee—under the statute.* Under section 170 of the Criminal Code, a bailee may commit a statutory larceny of the subject of bailment, notwithstanding the possession is in him. The effect of this statute is to make that a crime which before was a mere breach of trust.

12. SAME—*allegations and proof—as to the common law and statutory offence.* Under an indictment for a common law larceny, no conviction can be had for the statutory offence made larceny by section 170 of the Criminal Code.

13. INSTRUCTION—*on hypothesis which evidence tends to prove.* Where there is evidence tending to show that one indicted for larceny at common law received the money alleged to have been stolen, as a bailee, for safe keeping, it is error in the court to refuse to instruct the jury, at the instance of the defendant, that there could be no conviction under the indictment as framed, for the statutory offence.

WRIT OF ERROR to the Circuit Court of Johnson county; the Hon. D. M. BROWNING, Judge, presiding.

Messrs. GREGG & PARISH, for the plaintiff in error:

The indictment being for a common law larceny, to sustain it the proof must have shown that defendant took the coin with intent to steal the same at that time.   The court, however, instructed the jury that it was not necessary for the People to prove that defendant, at the time he took possession of the coin, intended to steal it; but if the proof showed that he came into possession of the coin lawfully, as bailee, without intention at the time to steal it, and afterward converted the same to his own use with intent to steal, they should find him guilty as charged.

The instruction conflicts with the rule that the allegations and proof must agree, and is in conflict with *Kibs* v. *People,* 81 Ill. 600, *Welsh* v. *People,* 17 id. 339, and *Stinson* v. *People,* 43 id. 397.

Where a statute makes a conversion by a bailee larceny, and the bailee guilty of larceny as if the original taking was felonious, the relation of bailee must be stated in the indictment.   Bishop on Statutory Crimes, secs. 419–421; *People* v. *Smith,* 23 Cal. 280; *People* v. *Jersey,* 18 id. 337; *People* v. *Poggi,* 19 id. 600; *People* v. *Peterson,* 9 id. 313; *People* v. *Cohen,* 8 id. 42.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

At the November term, 1883, of the Johnson county circuit court, John T. Johnson was convicted, and sentenced to the penitentiary for two years, for the larceny of five twenty-dollar gold pieces, the property of one Charles Grattan.   The present writ of error is brought to reverse that conviction.

The evidence tends to show the money charged to have been stolen was voluntarily delivered by the owner to the

accused for safe keeping, the former being on a spree, and considerably intoxicated at the time. The indictment under which the conviction was had, was in the ordinary form, charging the defendant with a common law larceny, merely. It was contended on behalf of the accused, in the court below, and the claim is renewed here, that the facts proven do not establish a larceny at common law, and that consequently there can be no conviction under the indictment as framed, even conceding the evidence makes out a case against him as bailee, under the 170th section of the Criminal Code. If it be conceded as a matter of fact that the evidence does not establish a larceny at common law, but at most a mere statutory larceny, then we agree with counsel for the accused the conviction was improper, for no principle of criminal pleading is better settled than that an indictment for a mere statutory offence must be framed upon the statute, and that this fact must distinctly appear upon the face of the indictment itself. That it shall so appear, the pleader must either charge the offence in the language of the act, or specifically set forth the facts constituting the same. It sometimes happens, however, that the language of a statute creating a new offence does not describe the act or acts constituting such offence. In that case the pleader is bound to set them forth specifically. This elementary rule is laid down in all standard works on criminal law, and is fully recognized by this court. 1 Wharton on Crim. Law, secs. 164, 372; *Kibs* v. *The People*, 81 Ill. 599.

The 170th section of the Criminal Code, just referred to, is as follows: "If any bailee of any bank bill, note, money, or other property, shall convert the same to his own use, with intent to steal the same, or secretes the same with intent so to do, he shall be deemed guilty of larceny." This provision of the statute, according to a well settled construction given to similar statutes, both in this country and in England, was not intended to apply to any cases which are larcenies at

common law. (2 Archbold's Crim. Proc. & Pleading, 574; 2 Wharton on Crim. Law, sec. 1905.) Hence all cases falling within it are mere statutory larcenies, and are therefore subject to the rule of pleading applicable to statutory offences, as above stated.

Assuming the accused to be guilty of either the statutory or the common law offence, it was the duty of the jury to determine, as matter of fact, from the evidence before them, which of the crimes had been committed. On the other hand, it was the duty of the court, if requested, to instruct the jury as to all matters of law arising out of the evidence, calculated to aid the jury in the performance of this and other duties. On the trial of the cause the court declined to instruct the jury, at the instance of the accused, that there could be no conviction, under the indictment as framed, for the statutory offence. The ruling of the court in this respect, of course, was erroneous, if there was evidence before the jury upon which to base the instruction. But before further discussing the facts, it will be proper to state, as near as may be, the essential elements that enter into the crime of larceny at common law, and to particularly point out wherein it differs from the statutory offence.

Larceny, by the common law, is defined to be "the felonious taking and carrying away of the personal goods or property of another." From this definition it follows that every larceny necessarily includes a trespass, for a trespass to personal property is nothing more than the unlawful and forcible taking of the goods of another without such felonious intent; and as trespass is an injury to the possession only, it logically and legally follows that no one in the lawful possession of goods can commit a larceny of them, for it were idle and absurd to talk of one committing an injury to his own possession,—and such is the well settled doctrine of the common law. One, however, may have the actual custody of goods, and yet not have the possession. Thus, goods on

the premises of the owner, to be used by himself and family, including his servants, are always to be deemed in the possession of the owner, although the ordinary duties of the servants and other members of the household require them, from time to time, to handle, occupy or use them, or even to sell or dispose of them to others. So where chairs, beds, etc., are occupied ·by a guest, whether in a hotel or in a private family, or where plates or other articles are used by one at the table of another,· or where the owner delivers a chattel to another to be examined or used for ·some temporary purpose in the presence of the owner, 'the same rule applies. In all these cases, and in all others analogous in principle,· the possession remains with the owner, and those having the temporary· use or occupancy of the property are deemed, in. law, to have the mere custody of it, as contradistinguished from the possession. But where the owner of a chattel delivers it to one, other than to a mere servant, in trust, upon a contract, express or implied, that the latter will faithfully execute the trust, the rule is different. In such case, which is one of ordinary bailment, the possession as well as the custody of the chattel passes to the bailee with its delivery; and it follows from what we have said, while the contract of bailment subsists, the bailee can not, by the common law, commit a larceny of the chattel. Such is undoubtedly the common law rule with respect to larceny by bailees. It is to be borne in mind, however, that in all cases where this rule is properly applicable, the delivery of the property must have been fairly and honestly obtained, otherwise the legal possession will remain with the owner, notwithstanding the· delivery. In such case the apparent contract of bailment is, at the election of the bailor, in contemplation of law really no contract at all, by reason of the fraud, for it is. a familiar principle that fraud vitiates whatever it enters into. On this principle, whenever there is an original purpose on the part of the bailee to steal the property, and the bailment is a mere pretence on

his part to hide a felonious intent, the possession will not pass; and if the property is subsequently converted, in pursuance of such criminal purpose, it will be larceny by the common law. But even in cases where the contract of bailment is valid, and the possession has passed to the bailee, if the latter is guilty of any tortious act in respect to the subject of bailment, whereby the contract is terminated, the possession will result to the bailor, although the actual custody of the property bailed remains in the bailee; and if the latter, after the contract has been thus terminated, appropriates it to his own use with intent to steal it, he will be guilty of larceny at the common law. Thus, where a carrier of goods broke a package, and fraudulently converted a part of them, it was held to be larceny. So where one to whom was handed a letter containing money, to be carried to the post office, broke it open on the way, and afterwards converted the money, it was held the same way. The tortious acts of breaking the package in the one case, and the breaking open the letter in the other, severally terminated the contracts of bailment, and the legal possession resulted to the respective owners.

From this review of the subject it will be perceived there are three classes of cases in which convictions for larceny at common law are sustained where the apparent possession is in the accused: First, where the accused has the mere custody of the property, as contradistinguished from possession, as in the case of servants and the like; second, where he obtains the custody and apparent possession by means of fraud, or with a present purpose to steal the property; and third, where one having acquired possession by a valid contract of bailment, which is subsequently terminated by some tortious act of the bailee, or otherwise, whereby the possession reverts to the owner, leaving the custody, merely, in the former, and the bailee, while being thus a mere custodian, feloniously converts the property to his own use. But in all these cases the legal possession is in the owner at the time

of the felonious conversion, the accused, in contemplation of law, being regarded as a mere custodian of the property. It is to be further noted, that in those cases where the contract of bailment has been induced by the fraud of the accused, and convictions are permitted on that ground, the owner does not, either in fact or in law, part or intend to part with the property itself, and the constructive possession which he has of it by reason of his general ownership, is held to be superior to a *quasi* possession or custody acquired by mere fraud or other wrongful act. But where the owner intends to part both with the title and possession, and the property is delivered in pursuance of such intention, the person receiving it can not be convicted of larceny, although the transfer was induced by the fraud of the latter, and with a purpose to steal the property. In these cases the title actually passes, subject to the right of the owner to reclaim the property on account of the fraud, and thus reinvest himself with the title; but until he does this, both the title and possession are in the fraudulent vendee, and hence the latter can not be convicted of a larceny of it. The general doctrines of the common law in respect to larceny, as affected by the possession of the property, will be found, upon an examination of the following authorities, to be substantially as stated above: 2 Archbold's Crim. Proc. & Plead. 442; 2 Wharton on Crim. Law, secs. 1840, 1843; *Rex* v. *Bazely,* 2 East's P. C. 571; *Bull's case,* id. 572; *Lavender's case,* id. 566; *Rex* v. *Mucklow,* 1 Moore, 160; 2 East's P. C. 692; *Baxter* v. *People,* 3 Gilm. 368; *Welsh* v. *People,* 17 Ill. 339; *Stinson* v. *People,* 43 id. 399; *Zschocke* v. *People,* 62 id. 127; *Phelps* v. *People,* 55 id. 334.

As a bailee is one who has the possession and a qualified property in goods or other personal property under a contract with the owner, either express or implied, it follows from what we have said, and the authorities just cited, that he can not commit a larceny of the subject of the bailment so long as the contract under which he holds the same is sub-

sisting; but when the contract by any means terminates, he, of course, ceases to be a bailee, and the possession, as we have already seen, results to the owner, although the bare custody may still remain with the bailee. In short, as we have heretofore seen, a bailee can not, at the common law, commit a larceny of the subject of bailment, for the reason the possession is in the bailee. Under the 170th section of the Criminal Code, however, a bailee may commit a statutory larceny of the subject of bailment, notwithstanding the possession is in the bailee. Indeed, by the very terms of the act a bailee in possession alone, can commit the statutory offence, for there can be no such a thing as a bailee out of possession. The effect of the statute therefore is, to make that a crime which before the act was a mere breach of trust.

The question then recurs, assuming the defendant to be guilty, does the evidence tend to show he is guilty of the statutory offence? Of this there is absolutely no doubt. The prisoner swears positively the money was given to him by Grattan for safe keeping, and in this statement he is certainly somewhat corroborated by others. This, of course, assuming it to be true, constituted a bailment of the money, and assuming the contract of bailment to have continued in force until the time of conversion, (and there is nothing in the evidence showing the contrary,) it afforded a complete answer to the common law indictment. But for the purposes of the question before us it is wholly immaterial whether the evidence tending to show the bailment was true or false. The evidence was before the jury. Of that there is no doubt; and it was the right of the accused to have the jury instructed as to what his rights were, in the event they found the facts as stated by him. The denial of this right was error, for which the case will have to be reversed. If there was an original intent to steal the money, the prisoner might well have been convicted under the indictment as framed, as that would have been larceny at the common law, and it was the

right of the People to have the jury so instructed. But this was but one side of the case,—both should have been given. It may be the jury convicted the accused upon the hypothesis there was an original intent to steal the money; but upon the record before us no one can tell. Whether the jury would have been justified in convicting upon this theory, is a question about which we express no opinion, and with which we are not, as the case is now presented, concerned. If the court had given the defendant's instruction presenting this theory of the case, to the jury, then this question would become important; but as it did not, the question is immaterial. If a conviction under the statute was relied on, the indictment should clearly have set out the fiduciary relation of the accused with respect to the money,—or, in other words, should have set out the facts constituting the bailment. This was not done. The accused not being charged with the statutory offence, it is therefore clear he can not, under the present indictment, be convicted of it. Some statutes, in other respects like our own, expressly provide that a conviction may be had under a common law indictment. The present English statute contains such a provision, but ours does not,—hence the common law principles of pleading are to be applied with us, while a different rule would prevail in those States or countries where such a statutory provision exists. In the absence of such a provision the authorities uniformly hold as we have stated.

The judgment of the circuit court is reversed, and the cause remanded for further proceedings in conformity with the views here expressed.

*Judgment reversed.*