(No. 13464.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSH L. WRIGHT *et al.* Plaintiffs in Error.

*Opinion filed February 15, 1921.*

1. CRIMINAL LAW—*mistake in indorsing character of offense on indictment is not fatal.* A mistake by the State's attorney or the foreman of the grand jury in indorsing an indictment as being for a certain offense when another offense is charged is not fatal, and the indictment will be sustained regardless of the indorsement.

2. SAME—*when indictment sufficiently charges mutilation of public record.* An indictment charging the defendants with cutting a leaf out of a certain deed record in the office of the circuit clerk and *ex-officio* recorder of a certain county and that the leaf so cut contained the record of a certain deed sufficiently charges mutilation of a public record under section 176 of the Criminal Code, although the ownership of the record is not alleged and there are other averments in the indictment not essential to the offense.

3. SAME—*when instruction is prejudicial.* Where the defendants are charged with having cut a leaf out of a deed record and the charge is denied by them, an instruction authorizing the jury to find them guilty if they believe from the evidence that the defendants conspired and agreed to cut the leaf out, is erroneous in assuming that one of the defendants did cut out the leaf instead of requiring the jury to find that fact from the evidence.

4. SAME—*what does not preclude the defendants from assigning error.* An order releasing certain defendants on probation after they have been sentenced is unauthorized and cannot be regarded as an acceptance of the verdict so as to preclude such defendants from assigning error.

CARTER, J., specially concurring.

WRIT OF ERROR to the Circuit Court of Gallatin county; the Hon. JULIUS C. KERN, Judge, presiding.

GEORGE W. PILLOW, and CREIGHTON & THOMAS, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, MARSH WISE-HEART, State's Attorney, and FLOYD E. BRITTON, (THOMAS H. DAILY, of counsel,) for the People.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Josh Wright, Sam Bentley and Herman Bentley, plaintiffs in error, were convicted in the circuit court of Gallatin county under an indictment charging that they "did feloniously, fraudulently and maliciously cut a leaf out of deed record No. 36 in the office of the circuit clerk and ex-officio recorder of Gallatin county, Illinois, which leaf so cut out contained pages numbers 519 and 520, and upon said page No. 519 was a record of a certain deed wherein Thomas M. Wright conveys certain real estate therein described to Laura Wright, the property of the said Laura Wright, with the intent then and there feloniously and fraudulently thereby to defraud, prejudice and injure the said Laura Wright, contrary to the form of the statute in such case made and provided." They were sentenced to confinement in the penitentiary, but an order was entered suspending the sentence as to Sam Bentley and Herman Bentley and releasing them on probation. The plaintiffs in error sued out a writ of error from this court for a review of the record.

The conviction was based on evidence introduced by the People that Josh Wright cut from record book 36 in the recorder's office of Gallatin county a leaf containing the record of a conveyance of property from Thomas Wright to Laura Wright. The situation of which there was evidence and as stated by counsel for both parties was as follows: On May 3, 1907, Thomas Wright owned eighty acres of land in Gallatin county, upon which he lived with his wife, Laura, and their children, and on that day he executed a deed of the land to his wife and acknowledged the same before a justice of the peace, and the deed was recorded in deed record 36 in the office of the recorder, on page 519. Wright died soon after, and about six months after his death his widow was married to Willis Banks. Some time after her second marriage she sold the land to

Alex Burroughs, who afterwards sold it to Sam Bentley, one of the plaintiffs in error. About two years after Wright's death another deed was filed for record exactly like the first one, except that Laura Wright's name appeared as a grantor and in the acknowledgment, and this deed was recorded in deed record 39, at page 264. After the conveyance of the land to Sam Bentley the heirs of Thomas Wright brought suit against Bentley to recover the land, on the ground that it was a homestead worth less than $1000 and the wife did not join in the deed, and the second deed was not signed by Laura Wright but her name was a forgery. Herman Bentley is a son of Sam Bentley and married a step-daughter of Josh Wright. While the suit for the land was pending, on May 2, 1917, the three defendants were in the office of the recorder, and it was charged that Josh Wright then cut out of the record a leaf on which were pages 519 and 520, containing the record of the first deed from Thomas Wright to Laura Wright, in which she did not join.

Harry Gregg, son and deputy of J. G. Gregg, circuit clerk and recorder, testified the three defendants came into the office and wanted to see the deed record from Thomas Wright to Laura Wright; that the deed record had been called for frequently, and he went into the vault and got deed record 36 and opened the record; that they asked for the other record, and he put deed record 36 on the north end of the desk and went into the vault and got the other record; that he was showing that record to Herman Bentley and Sam Bentley and was reading the deed to them; that the witness was at the west desk with Sam and Herman Bentley and they were between Josh Wright and the witness; that the witness got out of breath and stopped reading and then heard paper rattling and went over to where Wright was standing at deed record 36; that Wright was turning the paper back,—pushing it back into the record and putting the sheets back in place; that pages 518 and 519 were ex-

posed when they had the record down on the north desk, and Wright leaned over it, pretending to be reading; that there were twenty pages cut, numbered from 501 to 520, inclusive; that Wright left the office and the father of the witness came in and was shown the condition of the book, and they then called Herman Bentley and Sam Bentley and showed them the condition; that Herman Bentley went to town and got Wright and brought him back to the office and he was accused of cutting the pages out of the deed record and said that he did not do it, and Sam Bentley said, "I am sorry it happened; people might think I did it." The defendants proved that Wright could not read or write, and he denied that he cut the leaves out of the record or knew anything about it, and said that he did nothing at the office except to inquire whether a mortgage which he had paid had been released. Sam Bentley and Herman Bentley testified that they did not cut any pages from the record and did not know who did and had nothing whatever to do with the mutilation of the record. The attorney for Thomas Wright's heirs testified that according to his recollection Josh Wright told him he would give him a $100 fee to rely upon a certain deed, but he did not remember which deed it was, and Josh Wright said respecting the alleged offer that he told the attorney that he could probably get $100 if he tried the suit; that the deed was a bogus deed and the first one was a good one, or supposed to be a good one.

It is contended by counsel for plaintiffs in error that the indictment was for malicious mischief under section 194 of division 1 of the Criminal Code, and that the indictment was bad because no prosecutor was indorsed thereon, as required by statute, and the evidence failed to sustain the conviction. The indictment was not framed on section 194, which makes it an offense against the law to fraudulently or maliciously tear, burn, efface, cut or in any other way destroy or secrete any deed or other writing therein speci-

fied, or any day-book or book of account, with intent to defraud, prejudice or injure any person or body corporate, and the indictment contained no charge of that kind. Section 176 relates to public records and the indictment was framed on that section, which is as follows:

"Sec. 176. If any judge, justice of the peace, sheriff, coroner, clerk, recorder, or other public officer, or any person whatsoever, shall steal, embezzle, alter, corrupt, withdraw, falsify or avoid any record, process, charter, gift, grant, conveyance, bond or contract, or shall knowingly and willfully take off, discharge or conceal any issue, forfeited recognizance, or other forfeiture, or shall forge, deface or falsify any document or instrument recorded, or any registry, acknowledgment or certificate, or shall alter, deface or falsify any minute, document, book, or any proceeding whatever, of or belonging to any public office within this State, the person so offending shall be imprisoned in the penitentiary not less than one nor more than seven years."

The indictment charged that the defendants cut a leaf out of deed record 36 in the office of the circuit clerk and *ex-officio* recorder of Gallatin county, which was an averment that the deed record was a book belonging to a public office within this State and that it was mutilated by the defendants. It alleged that the leaves so cut out contained pages 519 and 520, and upon page 519 was a record of a deed of Thomas Wright to Laura Wright, and these were sufficient charges under section 176, although other things were added not essential to constitute the crime. It was not necessary to allege the ownership of the record mutilated, (*Loehr* v. *People*, 132 Ill. 504,) and the position that the record of the deed was alleged to be the property of Laura Wright is incorrect. The meaning of the averment is that the real estate described in the deed was the property of Laura Wright, but all that was alleged in the indictment beyond the terms of the statute was surplusage and did not affect the indictment. The indictment was in-

dorsed "malicious mischief," but it was not for malicious mischief and the law did not require the name of a prosecutor to be indorsed upon it. If a State's attorney or the foreman of a grand jury by mistake indorses an indictment as being for one offense when a different offense is charged, the indictment will be sustained regardless of the indorsement. *Collins* v. *People*, 39 Ill. 233.

There is some warrant for the claim of counsel for the plaintiffs in error that the defendants were actually tried for malicious mischief under section 194, both in the introduction of evidence and by the following instruction:

"The court instructs the jury that the defendants, may be convicted on direct evidence, or on circumstantial evidence, or on both direct and circumstantial evidence, and in this case if you believe from the direct evidence or the circumstantial evidence or both from the direct and circumstantial evidence, beyond all reasonable doubt that the defendants committed the crime of malicious mischief in manner and form as charged in the indictment then you may find the defendants guilty."

If, however, the record was free from prejudicial error, the intermixture of the different offenses would not be sufficient cause for reversing the judgment if no harm could have come therefrom to the defendants.

The evidence was contradictory, and it was essential that the jury should be permitted to consider the evidence for the defendants under correct instructions as to the law. The court gave at the instance of the People the following instruction:

"The court instructs the jury, as a matter of law that if you believe from the evidence, beyond a reasonable doubt that the defendants conspired and agreed to cut the leaf out of the record with the felonious intent to defraud, prejudice or injure Laura Wright in manner and form as charged in the indictment then you may find the defendants guilty."

This instruction again introduced the feature of malicious mischief, and also authorized the jury to find the defendants guilty if they conspired and agreed to cut the leaf out of the record, without making it a condition of such a verdict that they did cut the leaf out, which they had denied. The defendants could not be found guilty unless the jury believed, beyond a reasonable doubt, that Josh Wright cut the leaf out of the record as charged, and merely conspiring and agreeing to do it would not justify a verdict of guilty. The instruction practically assumed that the leaf was cut out of the record by Josh Wright, which was an error that cannot be overlooked.

It is insisted on behalf of the People that Herman Bentley and Sam Bentley cannot assign error on the record because of the order admitting them to probation, which, it is said, was an admission that the verdict was right. The record shows that after overruling motions for a new trial and in arrest of judgment the court rendered judgment upon the verdict against the said defendants, "and sentenced the said defendants, Sam Bentley, Herman Bentley and Josh L. Wright, to the Southern Illinois Penitentiary at Chester, Illinois, for a term of years not less than the minimum nor greater than the maximum, to remain there until discharged in the due course of law, and suspended said sentence as to the defendants Sam Bentley and Herman Bentley and released them on probation for a period of one year, and adjudged that the defendant Josh L. Wright pay one-third of the costs, and ordered and directed that the sheriff of said county of Gallatin carry said judgment and sentence into effect by taking and delivering the said Josh L. Wright to the warden of said penitentiary." The statute concerning probation was explained in *People v. Andrae,* 295 Ill. 445, where it was said that "after entry of judgment" means that period in the proceedings where the prisoner has taken all the steps he desires to take, and where the court has decided finally to receive and

enter the plea or verdict of guilty on the records of the court and nothing remains to be done by the court except to pronounce sentence. There is no authority for sentencing a defendant and suspending the execution of the sentence by making an order that the defendant be admitted to probation. The order in question was without authority of law and could not be an acceptance of the verdict. Each of the plaintiffs in error has the right to assign error on the record.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Mr. JUSTICE CARTER, specially concurring:

I concur in the foregoing opinion reversing and remanding the cause. I am of the opinion, also, that the cause should be reversed for the reason that the indictment is based on a different section of the Criminal Code from that which the evidence found in the record tends to support. I think, rightly construed, the indictment is based on section 194 of the Criminal Code, while the State contends,—and the foregoing opinion seems to uphold that contention,—that it is based on section 176 of the Criminal Code.

It is an elementary principle that every material fact essential to the commission of a crime must be distinctly alleged and clearly proven on the trial in order to warrant a conviction. (*Williams* v. *People,* 101 Ill. 382.) "A party accused of crime should be fully advised by the indictment of all the material facts relied upon to establish the offense of which he stands charged." (*Kerr* v. *People,* 42 Ill. 307.) An indictment must allege all the facts necessary to constitute the crime with which the defendant is charged, and if it does not set forth such facts with sufficient certainty it will not support a conviction. (*People* v. *Stoyan,* 280 Ill. 300; *People* v. *Picard,* 284 id. 588.) This rule is not abrogated by section 6 of division 11 of the Criminal Code,

which provides that "every indictment or accusation of the grand jury shall be deemed sufficiently technical * * * which states the offense in the terms and language of the statutes." (*Prichard* v. *People,* 149 Ill. 50.) An indictment for a mere statutory offense must be framed upon the statute, and this fact must distinctly appear upon the face of the indictment itself. (*Johnson* v. *People,* 113 Ill. 99; *West* v. *People,* 137 id. 189; *Cochran* v. *People,* 175 id. 28.) In criminal pleadings the highest degree of certainty is always required. (*Wilkinson* v. *People,* 226 Ill. 135.) A statute creating an offense is to be closely followed. (1 Wharton on Crim. Proc.—Kerr's 10th ed.—sec. 280.) "Statutory provisions permitting charges to be drawn in plain language only dispense with technicalities and not with the necessity under the former system of fully stating the offense so that the accused may know with what he is charged and so that a judgment may be pleaded in bar to a subsequent prosecution for the same offense." (10 Ency. of Pl. & Pr. 481.) "The general rule undoubtedly is, that in charging a statutory offense it is sufficient to charge the offense in the language of the statute or in terms substantially equivalent thereto. [Citing authorities.] But this rule is subject to the qualification that the indictment must either by the statutory description or by other apt averment so identify the offense as to meet the requirements of the constitution." (*People* v. *Clark,* 256 Ill. 14.) The accused is entitled to a plain statement of the charge against him, and such charge must be positive and not by way of recital, and must be more than a mere statement of a legal conclusion. "The charge must be stated with as much certainty as the circumstances of the case will permit." (14 R. C. L. 173.) "An indictment or information charging an offense denounced and defined by statute should be as fully descriptive of the offense as is the language of the statute, and should allege every substantial element of the offense as defined by the statute." (14 R. C. L. 185.)

A reading of this indictment in connection with sections 176 and 194 of the Criminal Code shows that it has not followed clearly the wording of either section, but it seems to me to contain more nearly the wording of section 194 than of section 176. Considered in connection with these sections of the Criminal Code and the authorities cited above, I think this indictment cannot be fairly said to be based on section 176 of the Criminal Code, and that therefore the judgment of the circuit court should for that reason be reversed.