DREW, Justice.
This case is before the court on an original petition for writ of habeas corpus and return by the custodian. Petitioner was convicted by a jury after a trial on an information charging him with breaking and entering with intent to commit a misdemeanor. The original sentence was pronounced by the court on October 28, 1954 in the following language:
“Now, Therefore You, Thomas McMahon, having pleaded Not Guilty and having been tried by Jury and having been adjudged Guilty of the crime of Breaking and Entering to Commit a a Misdemeanor, as charged in the Information filed herein, are adjudged by the Court to be guilty thereof, and for the crime for which you do now stand guilty and convicted, It is the Judgment of the Court and the Sentence of the Law, that for your said offense, that you do be taken in custody by the *808 Sheriff of.Palm Beach County, Florida, and by him delivered to the proper authorities of the State Prison of the State of Florida, and there be confined at hard labor for a period of Five (5) Years, to date from date of first incarceration, to-wit: April 27, 1954.
“It is Ordered by the Court that the balance of Sentence do be suspended * ¡is *;;
on certain conditions which need not be recited in this opinion.
Petitioner was allowed to go free subject to the conditions placed upon his conduct by .the sentence of the trial judge. On January 11, 1956, the trial judge revoked ¡the suspension of sentence after hearing the defendant’s testimony in his own behalf and entered a sentence requiring petitioner to be confined at hard labor for a period of five years. The petitioner was incarcerated, January 12, 1956.
Petitioner claims that the information upon which he was convicted wholly failed to state a crime for which he could have been sentenced “because there is no Florida law which takes into account, or was intended to take into account, such an offense as breaking and entering to commit a misdemeanor, to wit: assault and battery.” “Petitioner shows that the crime of breaking and entering is, and always has been held at law to be a crime against property; whereas assault and battery is a crime against the person.”
The information charged petitioner with the crime in the following terms: [He] “ * * * unlawfully did then and there break and enter the building of another, to-wit: the dwelling house of Jean Watters, with intent then and there commit a misdemeanor, to-wit: assault and battery by, then and there beating, bruising and ill-treating the said Jean Watters”. This information correctly charges a crime under the language of Section 810.05 F.S. 1955; “Whoever breaks and enters or enters without breaking any dwelling * * * with intent to commit a misdemeanor, shall be punished by imprisonment in the state prison or county jail not exceeding five years, * * The case of Vawter v. State, 63 So.2d 255 (Fla.1953) is a direct, adverse answer to petitioner’s claim. In that case we held:
“ * * * one may, under the law, be found guilty of breaking and entering a building with intent to commit an offense against the person as well as against property; that if he harbors an intent to assault and batter he is as amenable as if he intended to steal.”
Petitioner asserts that his trial, which was conducted without the aid of counsel, violated the Constitution of the United States, Amendment Fourteen, and the Florida Constitution (Declaration of Rights, § 11: “shall be heard by himself, or counsel, or both”) which guaranteed to him the right to have counsel for his defense under the circumstances of his trial. He states his case as follows:
“Petitioner was very nervous and upset and Judge Newell ordered him to be examined by a Sanity Board. The Sanity Board decided Petitioner to be sane and competent, knowing right from wrong, and able to assist his coun-sclor.
“Due to his upset condition it must have been apparent to Judge Newell that Petitioner ivas not competent and able to conduct and prepare his own legal defense. * * *
jfs ij<
“This was the Petitioners first appearance in any Court on a felony charge of any kind and that therefore he had no knowledge of Court proceed-ure or how to prepare his defense.”
The affidavit of Judge Newell attached to the return of the custodian gives a narrative of the events preceding the convic *809 tion of the petitioner. In that affidavit it is said, inter alia:
“That the defendant was first before the Court on May 1, 1954, * * * at which time arraignment was passed to May 13, 1954, at the request of defense without objection by the State;
There were several further delays at the request of the defense. It is not entirely clear when petitioner first acquired counsel, but on June 15, 1954, he appeared in court with his counsel; and on June 29, 1954 the defendant appeared in court with his counsel, and upon arraignment, entered a plea of not guilty by reason of temporary insanity. The case was again passed, this time until the September term, 1954 at the request of the defense. The affidavit then says:
“At that time, it appearing to the Court and counsel for the defendant that the defendant was mentally unstable, the Court directed that the record show that should the defendant gain admittance to a hospital at a later date the Court would release the defendant without bond. * * * on the 14th day of September, 1954 the defendant appeared before the Court for the purpose of having the Court subpoena witnesses to testify in his behalf. On September 16, 1954, defendant’s witness subpoenas issued; that on September 23, 1954, the defendant appeared in Court and announced that attorney, Jordan Johnson, no longer represented him and that he would try his own case. At no time was any request' made that the Court appoint counsel for the defendant, or that the case be continued until the defendant might have an opportunity to secure other counsel of his own selection. That prior to the trial and at the suggestion of the Court an insanity hearing was had before the Honorable Richard P. Robbins, County Judge,' Palm Beach County, Florida, and it was at that hearing determined that the defendant was legally sane. * * *
“That during the Court’s charge to the jury the defendant indicated that he did not want a plea in the record of not guilty by reason of temporary insanity and the jury was excused while the Court explained to the defendant the effect of. this plea. The defendant asked leave to withdraw his plea of not guilty by reason of temporary insanity and to enter a plea of not guilty. This motion was granted.” -
On the subject of a defendant’s right to counsel we held in Sneed v. Mayo, 66 So.2d 865, 872 (Fla.1953):
“(3) Where the record shows that the defendant did riot have counsel, or fails to show whether he did or did not have counsel, it will be presumed that the defendant waived' the benefit of counsel and elected tó present his own defense — as every person' has the right to do under the Florida Constitution. Decl.Rights, sec.' 11.
“(4) The presumption of waiver is rebutted by a showing that the accused was incapable, because of age, ignorance or lack of mental capacity, , of representing himself adequately at the trial.
“(5) Whether the defendant' is' or is not capable of represeiiting himself adequately at the trial is a factual issue which can be determined only by an examination and observation' of the defendant.
“(6) Where a trier of the facts has made a finding on the issue, his finding will not be disturbed by this Court when supported by competent credible evidence of record.”
Our most recent expression on this question appears in Sheffield v. State, 90 So.2d 449, opinion filed November 7, 1956.
*810 We conclude that the defendant waived his right to be represented by an attorney. Nor has it been made to appear that the trial judge abused his discretion in accepting such waiver in the case of this defendant, since he had ample time to observe the petitioner’s mental condition.
Petitioner has also raised several objections to the term of his sentence. No part of the prison term was served before January 12, 1956, following the revocation of the suspended sentence by the trial judge. Any incarceration prior to the verdict and sentence for this crime could not have been valid as a punishment for this specific crime. A person cannot be lawfully punished for an act before it is legally adjudged that he has committed the act. The sentence in question here was not imposed until after verdict and judgment and, therefore, the prior incarceration did not derive even colorable authority from the sentence in question. For this reason the language of the trial judge stating that the sentence should begin from “April 27, 1954” must be considered as surplusage. Lake v. McClelland, 101 Fla. 536, 134 So. 522 (1931); Brooke v. State, 99 Fla. 1275, 128 So. 814, 69 A.L.R. 1173 (1908). See also State v. Horne, 52 Fla. 125, 42 So. 388, 7 L.R.A.(N.S.) 719 (1906). That portion of the judgment which purported to suspend sentence upon certain conditions must be treated as void. Tanner v. Wiggins, 54 Fla. 203, 45 So. 459 (1907); Ragland v. State, 55 Fla. 157, 46 So. 724 (1908). There is no need to discuss the effect of Chapter 948, Florida Statutes 1955, since the trial judge did not comply with the requirements of that chapter.
We conclude that the petitioner was validly incarcerated, January 12, 1956, at which time he began to serve the term which was imposed by the original sentence of October 28, 1954. We interpret the original sentence to give the petitioner a four and one-half year sentence through the device of making the five year sentence begin one-half year before the prisoner could have begun serving time under the sentence. Thus, the “five year” sentence is actually a four and one-half year sentence. The second sentence entered by the trial judge, January 11, 1956 was without authority and therefore of no effect.
The petitioner is hereby refnanded to the custodian under the term imposed by the October 28, 1954 sentence as construed by this opinion.
It is so ordered.
TERRELL, C. J., and HOBSON, THORNAL and O’CONNELL, JJ., concur.
THOMAS and ROBERTS, JJ., not participating.