STATE OF MARYLAND ex rel. ANDREW L. SONNER,
STATE'S ATTORNEY FOR MONTGOMERY
COUNTY, MARYLAND v. PLUMMER
M. SHEARIN, Judge

[Misc. No. 3, September Term, 1974.]

* * *

STATE OF MARYLAND v. SCHOOLS

[No. 86, September Term, 1974.]

*Decided October 1, 1974.*

The causes were argued before Murphy, C. J., and Singley, Smith, Digges, Eldridge and O'Donnell, JJ., and Charles E. Orth, Jr., Chief Judge of the Court of Special Appeals, specially assigned.

*Henry R. Lord, Deputy Attorney General* and *Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *George A. Eichhorn, III, Assistant Attorney General,* on the brief, for petitioner in Misc. No. 3 and appellant in No. 86.

*Charles Norman Shaffer,* with whom were *Robert James Tubbs* and *Shaffer, McKeever & Fitzpatrick* on the brief, for respondent in Misc. No. 3. *Theodore A. Miller* for appellee in No. 86.

Smith, J., delivered the opinion of the Court.

We shall here hold that a trial judge (Shearin, J.) imposed an improper condition on an otherwise legal sentence when he suspended a portion of a five-year prison sentence for the use of a handgun in the commission of a felony. This suspension rendered the sentence illegal, since Maryland Code (1957, 1971 Repl. Vol., 1973 Cum. Supp.) Art. 27, § 36B (d) makes mandatory in such case the imposition of "no less than the minimum sentence of five years." Subsection (e) provides that "[n]otwithstanding any other provision of the law to the contrary, including the provisions of § 643 of [Art. 27, with exceptions not here pertinent,] no court shall enter a judgment for less than the mandatory minimum sentence prescribed in [that] subheading in those cases for which a mandatory minimum sentence is specified . . . [and] no court shall suspend a mandatory minimum sentence prescribed in [that] subheading . . . ."

We shall also hold that the trial judge's refusal to correct the illegal sentence was properly appealed by the State. However, we shall find it unnecessary to decide the issue

presented by a petition to us for the writ of mandamus directed to the trial judge.

Jerome Mercer Schools (Schools) entered guilty pleas to charges of assault with intent to rape, armed robbery (two separate charges), assault and battery (two separate charges), larceny of goods having a value of more than $100, use of a handgun in the commission of a felony, and illegal possession of a handgun. This was not his first experience with our criminal courts since the trial judge stated that Schools had been previously convicted of manslaughter, "sentenced as of March 16, 1970, to seven years in the Maryland penal system by the Anne Arundel County Circuit Court and paroled on November 23, 1971, after serving approximately 20 months of that term." In this case his sentences, all concurrent and all dating from February 14, 1973, ranged from seven years down to one year. However, for all practical purposes the sentences were for but two years since the trial judge suspended the balance of all sentences that had not expired by February 14, 1975.[1] An assistant state's attorney suggested to the trial judge that it was his understanding that the sentence in this case could not be suspended. The following then took place:

> "JUDGE SHEARIN: Well, I do not read the law that way.
>
> "The reasoning which applies to Section 36B, Subsection (e) is in apparent conflict with another section of Article 27. I will read it again.
>
> "MR. LEAR: You are speaking of 643, Your Honor?
>
> "JUDGE SHEARIN: 643 is specifically referred

---

1. Although the commitment in this case was to the Department of Correction, the commitment read, "Court directs sentences be served in the Montgomery County Detention Center," notwithstanding the provisions of Code (1957, 1971 Repl. Vol.) Art. 27, § 690 (b) directing that prisoners "shall be committed to the custody of the Commissioner of Correction and delivered to him for imprisonment" and that "[t]hereafter all such persons shall be held, confined in, assigned to or transferred to such of the institutions and facilities under the jurisdiction of the Department as the Department from time to time may order . . . ."

to but there is another provision of Article 27 which the Court had in mind aside from that.

"641 and 641A likewise purport to confer upon the courts of this State the power to suspend sentences.[2]

"I think, with all due regard to the General Assembly of Maryland as a separate and co-equal branch of the Government, that the courts of this State have inherent power, unencumbered by legislative prerogative or fiat, to impose such sentences as they may see fit within the maximums otherwise provided by law and to suspend all or part of such sentences. This Court does not intend to be bound by — until it is so held by a court of higher jurisdiction — the apparent intent of Subsection (e) of Section 36B of Article 27.

"If the Legislature wishes, by constitutional amendment approved by the voters, to deprive the courts of this State of the power to deal with the sentencing process, that the people can do.

"The Court believes that it has dealt with all of the charges now which require action by the Court, and the defendant is remanded to custody for execution of the sentence."

On March 27, 1974, in an attempt to compel the revision of the sentence as to the handgun violation, the State's Attorney for Montgomery County filed a petition with us for the writ of mandamus, the writ of certiorari, "or other appropriate relief." Judge Shearin was named as defendant in that petition. We passed an order on April 4 directing that this petition should be held in "abeyance, pending

2. No reference was made to §§ 641 and 641A in the opinion on motion to correct the sentence. The first section permits suspension of "the *imposition* of sentence." (Emphasis added.) Sentence in this case was imposed. The second authorizes suspension of "the imposition or execution of sentence." Here there was no suspension of the actual execution of sentence, but a suspension of a part of the sentence imposed, with no delay in actual execution. What the General Assembly said in § 36B (e) was that there should be no supension of the mandatory sentence "[n]otwithstanding any other provision of law to the contrary . . . ."

application by the State's Attorney for Montgomery County to the respondent judge pursuant to Maryland Rule 764 a, for an order nullifying the suspension of three years of the sentence." The State then filed a motion in the trial court for correction of the sentence. The motion was denied. The State appealed this denial to the Court of Special Appeals. Before that court considered the appeal, we granted the petition of the State for the writ of certiorari in order that we might consider the refusal of the trial judge to correct the allegedly illegal sentence (known here as No. 86, September Term, 1974) along with the petition for the writ of mandamus, etc. (known in this Court as Misc. No. 3, September Term, 1974). An answer was duly filed by the trial judge in the mandamus case. Leave was granted to Schools to intervene in that matter. He has filed an answer opposing the grant of the writ of mandamus, the motion for which has been renewed by the State. We directed that the cases be consolidated for argument and, because of the importance of the matter, advanced them and heard them on July 25.

I

## Supension of Sentence

We shall first consider the propriety of the suspension of sentence. In so doing, it must be remembered that under the Constitution and laws of the State of Maryland this Court has no power to determine the punishment which shall be imposed for any violation of law. It is not for us to say whether a given punishment is or is not that most likely to effectively reform the convicted criminal. Our examination of such a matter must be confined to ascertaining whether the judgment of a trial court is within the limits permitted and prescribed by law.

The trial judge, in refusing to alter the sentence he had previously imposed, took the view that the combination of the inherent power of the courts and the doctrine of separation of powers, as expressed in Art. 8 of the Maryland Declaration of Rights, in his view "mandates a government of three separate and co-equal branches," thus vesting him

with the power to do that which he did. He further stated, however, "that, if the Court of Appeals should conclude that Section 36B (e) is a valid exercise of the legislative power of the General Assembly, a serious question of statutory construction remains for ultimate decision by that Court." We shall consider those points in inverse order.

### (a) Statutory Construction

The trial judge pointed out that Chapter 13 of the Acts of 1972 added § 36B to Art. 27, that this was approved on March 27, 1972, and that this took effect from the date of its passage as emergency legislation. Subsection (e) of § 36B provided that sentence under it should not be suspended "[n]otwithstanding any other provision of law to the contrary, including the provisions of § 643 of [that] article," with certain exceptions not here pertinent. Then by Chapter 181 of the Acts of 1972, effective July 1 of that year, the General Assembly repealed and re-enacted § 643 of Art. 27, the amendment making it applicable to the District Court of Maryland in addition to the other courts to which it had previously applied. It is § 643 which has permitted judges in Maryland since its enactment by Chapter 563 of the Acts of 1906 "in lieu of the minimum penalty . . . prescribed [by statute to] impose a less penalty of the same character . . . ." Judge Shearin cited our holding in *Hensley v. Bethesda Metal Co.*, 230 Md. 556, 188 A. 2d 290 (1963), and 1A C. D. Sands, *Sutherland Statutory Construction* § 23.29 (4th ed. 1972). He then said:

"[W]e must conclude that, notwithstanding whatever decision may ultimately be rendered on the constitutional issue dealt with earlier in this opinion, Section 643 of Article 27 of the Maryland Code is no less viable and effective today than it was prior to the 1972 session of the General Assembly. In short, the authority, purportedly conferred by that section, to suspend sentences still survives."

The short answer to this contention is found in § 75 of Chapter 181 of the Acts of 1972. It states:

"Section 75. *And be it further enacted,* That any law enacted by the 1972 regular session of the General Assembly to amend, repeal, or add any provision of law which is amended, repealed, or added by this Act shall be construed and codified together with this Act, and each shall be given effect, if possible, and with due regard to the title of each. If the Acts are irreconcilable and cannot be construed together, then the other Act shall prevail over anything inconsistent therewith in this Act."

Accordingly, if there is a conflict between Art. 27, § 36B as enacted by Chapter 13 of the Acts of 1972 and Art. 27, § 643 as repealed and re-enacted by Chapter 181 of the Acts of 1972, the General Assembly has mandated that § 36B prevails, thus disposing of the contention relative to statutory construction.

(b) Inherent Power and Separation of Powers

Judge Shearin, in his opinion, quoted from Art. 8 of the Declaration of Rights which states:

"That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."

The only difference between that provision and Art. 6 of the Declaration of Rights in the Constitution of 1776, to which we shall later allude, is the prohibition against a person's exercising the functions of one of those departments assuming or discharging the duties of any other. This clause was added in the Constitution of 1851 and left unchanged in the Constitutions of 1864 and 1867. *See* Constitutional Convention Commission, *Constitutional Revision Study Documents* 604-605 (1968).

After referring to the provisions of Maryland Constitution art. IV, § 1 relative to judicial power, the statement of this Court in *Board of Zoning Appeals v. Meyer,* 207 Md. 389, 400-01, 114 A. 2d 626 (1955), "that the Legislature is without

authority to divest the courts of their inherent power to review the actions of administrative boards in order to determine whether they impair personal or property rights by reason of an unlawful or arbitrary exercise of discretion," and cases in which "[l]egislative attempts to cross this line of demarcation have consistently been stricken down as unconstitutional," the trial judge cited a number of cases in support of his conclusion that the General Assembly crossed into forbidden territory when it denied the right to the courts to suspend a sentence in cases such as this.

One of the cases cited by Judge Shearin was *People ex rel. Forsyth v. Court of Sessions*, 141 N. Y. 288, 36 N. E. 386 (1894), where the New York court concluded that at common law courts had the right to suspend sentences. A contrary conclusion was reached by the Supreme Court of the United States in *Ex parte United States*, 242 U. S. 27, 37 S. Ct. 72, 61 L. Ed. 129 (1916), after a careful examination of the authorities and cases, including *Forsyth*. Be that as it may, Judge Henderson declared for this Court in *Heath v. State*, 198 Md. 455, 464, 85 A. 2d 43 (1951), that "common law rights, unlike constitutional rights, are subject to change by the legislature," a statement which echoed that of Chief Judge Chase for our predecessors in *Coomes et al. v. Clements*, 4 Har. & John. 480, 481 (1819), that "[t]he common law of England is the common law of this State, excepting such changes as have been made by the Acts of the Legislature." When the common law and a statute collide, the statute, if constitutional, controls. Thus, any contention that the common law represents authority, in contravention of the clear proscription of Art. 27, § 36B (e), to suspend execution of a portion of the trial court's judgment so as to relieve the accused in part from suffering the sentence imposed is untenable.

Of the conclusion in *Miller v. United States*, 41 App. D.C. 52 (Ct. App. D.C. 1913), cited by Judge Shearin, Mr. Chief Justice White said for the Supreme Court in *Ex Parte United States:*

"It is true that in the District of Columbia the existence of the power was maintained. *Miller v.*

*United States*, 41 App. D.C. 52 (1913). But the unsoundness of the grounds upon which the conclusion was based is demonstrated by what we have previously said; and aside from this, as the subject was covered by an Act of Congress conferring power of parole (Act of July 25, 1910, 36 Stat. 864), the case requires no further consideration." *Id.* at 242 U. S. 50.

In *Spencer v. State*, 125 Tenn. 64, 140 S. W. 597 (1911), cited by the trial judge, the court said:

"[W]e have never recognized the common law practice of an indefinite suspension of judgment — and rightly. The reasons assigned for the practice by Lord Hale do not exist here." *Id.* at 70.

\* \* \*

"The case of *Daniel Allen v. State, Fulls v. State, Whitney v. State, James Allen v. State*, and *Crane v. State*, recognize the right of the trial judge indeed to suspend the execution by proper reservation made at the trial term, but only for purposes connected with the termination of the cause, and *Fulls v. State* strongly intimates, which we hold the only correct and true practice, that the order should state the cause or reason for the delay, and, we add, should specify the length of time for which it is to continue.

"In the present case it is apparent from the record that the trial judge granted the stay of execution solely as a reformatory measure, to secure future good behavior on the part of the prisoner. His motives, it is apparent, were of the highest character, based wholly upon a desire to subserve the public welfare. *However, he exceeded his powers.* We therefore hold that the stay of execution was . . . void." (Emphasis added.) *Id.* at 78-79.

Judge Shearin referred to the concurring opinion of Judge

McCormick in *State v. Wright*, 202 N.W.2d 72 (Iowa 1972). It must be noted that the Iowa court's majority opinion said, however:

> "The State does not dispute the principle of law that the authority to suspend sentences and grant probation is purely statutory, the court having no inherent power to do so." *Id.* at 77.

The trial judge also cited *Weber v. State*, 58 Ohio St. 616, 51 N. E. 116 (1898). It must be read in the light of the much later case of *State v. Zangerle*, 136 Ohio St. 371, 26 N.E.2d 190 (1940), where the court said:

> "The agreed statement of facts shows that the Court of Common Pleas of Cuyahoga county in many instances has imposed sentence for a felony committed, then suspended execution of sentence and placed the defendant on probation under the supervision of a probation officer. The statutes do not authorize such procedure and the power to suspend the execution of sentence as a basis for probation does not exist in the absence of an empowering statute." *Id.* at 384-85.

*State v. McCoy*, 94 Idaho 236, 486 P. 2d 247 (1971), is the only case cited by Judge Shearin which rested its conclusion upon the doctrine of separation of powers. That was a 3-2 decision in which the dissenters pointed out that in *McCoy* the court reached a result contrary to that in *In re Jennings*, 46 Idaho 142, 267 P. 227 (1928), and *In re Peterson*, 19 Idaho 433, 113 P. 729 (1911), neither of which was mentioned in the majority opinion. Moreover, if there exists in Idaho an equivalent to Maryland Constitution art. III, § 60, to which we shall later allude, it does not appear in the opinion in *McCoy*. Thus we conclude that *McCoy* is clearly distinguishable on the basis of that constitutional provision.

We have examined all of the cases cited by Judge Shearin, not all of which, as we have pointed out, support his conclusion. We think the better and majority view is that in the absence of statutory authority a court does not possess

any power, after sentence has been pronounced, to suspend the execution of its judgment so as to relieve an accused, either in whole or in part, from suffering the sentence imposed. We further believe that the General Assembly is possessed of the right to specify the penalties to be imposed by a court for the commission of a given crime. The right to prescribe a penalty includes the right to prescribe the minimum and maximum punishment to be imposed. It goes without saying that such penalties may not infringe upon constitutional rights and privileges. Within those limits, courts exercise judicial discretion in fitting a proper penalty to a specific defendant. Of course, in the case of common law crimes where no penalty has been prescribed by statute, courts are limited in the imposition of penalties only by the constitutional prohibition against cruel and unusual punishment. The right of the General Assembly to prescribe penalties is a part of the sovereign power of the State. Support for these views is found in 24 C.J.S. *Criminal Law* § 1618(1) (1961); 24B C.J.S. *Criminal Law* § 1975 a (1962); 21 Am.Jur.2d *Criminal Law* §§ 558, 577 (1965); 5 R. Anderson, *Wharton's Criminal Law and Procedure* § 2192 (1957); L. Orfield, *Criminal Procedure from Arrest to Appeal* 548-49 (1947); and 1 W. Burdick, *The Law of Crime* § 70 (1946). Cases cited in one or more of the above works or otherwise found to support the above views and the view we here take today include *Ex parte United States*, 242 U. S. 27, 37 S. Ct. 72, 61 L. Ed. 129 (1916); *Morgan v. Devine*, 237 U. S. 632, 35 S. Ct. 712, 59 L. Ed. 1153 (1915), quoting *United States v. Wiltberger*, 18 U. S. (5 Wheat.) 76, 95, 5 L. Ed. 37 (1820); *United States v. Fultz*, 482 F. 2d 1, 2 (8th Cir. 1973); *United States v. Sidella*, 469 F. 2d 1079, 1081 (4th Cir. 1972); *United States v. Ellenbogen*, 390 F. 2d 537, 541 (2d Cir. 1968); *Munich v. United States*, 337 F. 2d 356, 361 (9th Cir. 1964); *United States v. Lane*, 284 F. 2d 935, 939 (9th Cir. 1960); *Cook v. United States*, 171 F. 2d 567, 570 (1st Cir. 1948); *Hunter v. United States*, 149 F. 2d 710, 711 (6th Cir. 1945); *Lewis v. State of Oklahoma*, 304 F. Supp. 116, 122 (W. D. Okla. 1969); *Montgomery v. State*, 231 Ala. 1, 3, 163 So. 365, 101 A.L.R. 1394 (1935); *Pete v. State*, 379 P. 2d 625, 626 (Alas. 1963); *State v. Edge*, 96 Ariz. 302, 304, 394 P. 2d 418

(1964); *Davis v. State*, 169 Ark. 932, 934-36, 277 S. W. 5 (1925); *Wilson v. State*, 124 Ark. 477, 479-80, 187 S. W. 440 (1916); *People v. Alotis*, 60 Cal. 2d 698, 388 P. 2d 675, 36 Cal. Rptr. 443, 448, 450 (1964); *Oster v. Municipal Court*, 45 Cal. 2d 134, 139, 287 P. 2d 755 (1955); *People v. Burke*, Colo., 521 P. 2d 783, 785 (1974); *In re Nottingham*, 84 Colo. 123, 125, 268 P. 587 (1928); *Ziegler v. District of Columbia*, 71 A. 2d 618, 619 (D. C. Mun. App. 1950); *McMahon v. Mayo*, 92 So. 2d 806, 810 (Fla. 1957); *Ragland v. State*, 55 Fla. 157, 163, 46 So. 724 (1908); *Tanner v. Wiggins*, 54 Fla. 203, 45 So. 459 (1907); *People ex rel. Hanrahan v. Wilson*, 48 Ill. 2d 30, 35, 268 N.E.2d 23 (1971); *Village of Park Forest v. Bragg*, 38 Ill. 2d 225, 230, 230 N.E.2d 868 (1967); *People v. Burnett*, 394 Ill. 420, 425, 68 N.E.2d 733 (1946); *People v. Wright*, 296 Ill. 455, 461-62, 129 N. E. 819 (1921); *State v. Wright*, 202 N.W.2d 72, 76 (Iowa 1972); *Bax v. Fletcher*, 261 S.W.2d 662, 664 (Ky. 1953); *State v. Blanchard*, 156 Me. 30, 46-51, 159 A. 2d 304 (1960); *State v. Meyer*, 228 Minn. 286, 293-94, 37 N.W.2d 3 (1949); *Freeman v. State*, 220 Miss. 777, 782, 72 So. 2d 139 (1954); *State ex rel. Browning v. Kelly*, 309 Mo. 465, 470, 274 S. W. 731 (1925); *State v. Owen*, 80 N. H. 426, 427, 117 A. 814 (1922); *State v. Eighth Jud. Dist. Ct. In & For County of Clark*, 85 Nev. 485, 457 P. 2d 217, 218 (1969); *Delaney v. State*, 507 P. 2d 564, 567 (Okla. Crim. 1973); *Ex Parte Swain*, 88 Okla. Crim. 235, 239-41, 202 P. 2d 223 (1949); *Rightnour v. Gladden*, 219 Ore. 342, 348-50, 347 P. 2d 103 (1959); *Commonwealth v. Sweeney*, 281 Pa. 550, 559, 127 A. 226 (1924); *Ex Parte: Moore v. Patterson*, 203 S. C. 90, 94-95, 26 S.E.2d 319 (1942); *Cason v. State*, 160 Tenn. 267, 268, 23 S.W.2d 665 (1930); *Walker v. State*, 440 S.W.2d 653, 657-58 (Tex. Crim. 1969); *State v. Zolantakis*, 70 Utah 296, 303, 259 P. 1044, 54 A.L.R. 1463 (1927); *State ex rel. Woodhouse v. Dore*, 69 Wash. 2d 64, 69, 416 P. 2d 670 (1966); *State ex rel. Schock v. Barnett*, 42 Wash. 2d 929, 931, 259 P. 2d 404 (1953); *State ex rel. Zbinden v. Superior Court*, 135 Wash. 458, 463, 238 P. 9, 240 P. 565 (1925); *State ex rel. Lundin v. Sup'r Ct.*, 102 Wash. 600, 174 P. 473 (1918); *Calandros v. Gore*, 126 W. Va. 614, 617, 29 S.E.2d 476 (1944); and *Ex parte Fisher*, 95 W. Va. 397, 121 S.E. 287 (1924).

The keystone of the arch supporting the holding of many of

these cases is *Ex parte United States*, 242 U. S. 27, *supra.* In that case the Government sought the writ of mandamus against a United States district judge to compel him to sentence an individual, convicted of embezzling the money of a national bank of which he was an officer, to a five-year prison term, the shortest term which under the statute could have been imposed upon the defendant. "[T]he execution of the sentence [had been] suspended during the good behavior of the defendant, and for the purpose of [the] case [the] term of [that] court [was] kept open for five years." Mr. Chief Justice White examined and rejected for the Court contentions that courts were possessed of inherent judicial power to suspend sentence, that there was support for that proposition at common law, that support for the power asserted could be derived from the adjudication of state and federal courts, and that the Court should recognize the power as lawful because of its exertion in practice by the state and federal courts and the implications arising therefrom. The Court suggested the need for legislation authorizing such action. This did not come, however, until the passage of the Probation Act of 1925.

Statutes prescribing a heavier punishment for habitual criminals or successive offenders than for those convicted of crime for the first time have been upheld. *See, e.g.,* 39 Am.Jur.2d *Habitual Criminals*, etc. §§ 1, 2, 5 (1968), and *Oyler v. Boles*, 368 U. S. 448, 449, 82 S. Ct. 501, 7 L.Ed.2d 446 (1962). In the latter case the Court upheld a sentence which it said "provide[d] for a mandatory life sentence upon the third conviction 'of a crime punishable by confinement in a penitentiary.' "

In this State Judge Horney said for the Court in *Greenwald v. State*, 221 Md. 235, 155 A. 2d 894 (1959), *appeal dismissed*, 363 U. S. 719, 80 S. Ct. 1596, 4 L.Ed.2d 1521 (1960):

> "Furthermore, there is not the slightest doubt that the Legislature had the power to define what acts shall constitute criminal offenses and what penalties shall be inflicted on offenders, the only limitation being that such enactments shall not

infringe on constitutional rights and privileges. *Glickfield v. State,* 203 Md. 400, 404, 101 A. 2d 229, 231 (1953); *State v. Seney Company,* 134 Md. 437, 107 A. 189 (1919); 14 Am. Jur., *Criminal Law,* § 16." *Id.* at 240.

In *Kirschgessner v. State,* 174 Md. 195, 198 A. 271 (1938), Judge Sloan said for the Court:

"It is the province of the Legislature to fix the penalty for the commission of crimes and offenses, and thus limit the power of the courts to impose penalties, and, prior to the year 1906, courts were restrained by the limits, high and low, imposed by statute. By the Acts of 1906, ch. 536 (Code, art. 27, sec. 578): 'In all cases where the law prescribing a punishment for crime fixes a maximum and a minimum penalty therefor, the judge of the Criminal Court of Baltimore and the several judges of the Circuit Courts of the counties may, in lieu of the minimum penalty so prescribed, impose a less penalty of the same character; provided, however, that nothing herein contained shall be construed as affecting any maximum penalty fixed by law, or the punishment for any crime where the law provides one and only one penalty.' " *Id.* at 198.

The Act of 1906, to which Judge Sloan made reference, is the first enactment of what is now Code Art. 27, § 643.

In *Baltimore v. State,* 15 Md. 376, 458, 74 Am. Dec. 572 (1860), our predecessors cited *Bradford v. Jones,* 1 Md. 351 (1851), for the proposition "that the Constitution may receive an interpretation from a long, constant, and uniform legislative practice." In *Rose v. State,* 177 Md. 577, 10 A. 2d 617 (1940), Chief Judge Bond, in the process of overruling a claim of a defendant that she had been deprived of her constitutional right of trial by jury in a case where through her attorney she had initially elected a jury trial and then withdrew the election at the time of trial, electing to be tried by the court without a jury, said:

"The very men who adopted the constitutions, then,

or their contemporaries, conceived of the clauses [relative to trial before the court adopted early in our history] as in harmony with the familiar practice, and we are compelled to take this to be their meaning." *Id.* at 581.

An examination of Code (1957) Art. 27 will reveal that §§ 6, 18, 23, 26, 29, 32, 33, 44, 45, 46, 139, 340, 343, 348, 384, and 385, to mention but a few, were enacted by the General Assembly by Chapter 138 of the Acts of 1809. This was within 33 years of the adoption of the Declaration of Rights in the Constitution of 1776, Art. 6 of which stated:

"That the legislative, executive, and judicial powers of government ought to be for ever separate and distinct from each other."

Surely, these legislators must have been conscious of that provision, yet this statute provides minimum and maximum sentences. Accordingly, the inference may be drawn that by that act and the many acts since then prescribing minimum and maximum sentences the General Assembly has interpreted the constitutional provisions relative to separation of powers as in no way forbidding it to prescribe such minimum and maximum sentences.

We deem it significant that in *United States v. Vickery*, 1 Har. & John. 427 (1803), a case in the Circuit Court of the United States for the Maryland District involving the illegal slave trade, Judge Winchester said:

"The Court were disposed only to have imposed the fine, but upon looking at the law they were of opinion, that they were obliged to inflict both." *Id.* at 429.

In the case now before us, the trial judge paid lip service to the legislative mandate since the sentence he imposed was five years. In fact, he said in imposing sentence:

"Under Count Eleven, which is use of a handgun in commission of a felony, there is a mandatory minimum as the State has pointed out of five years,

and the Court imposes such a sentence of five years
on that count."

In other words, he recognized that the General Assembly
could specify a sentence of five years. He did not attempt to
give a two-year sentence, but gave the five-year sentence
and then suspended three years of it.

Maryland Constitution art. III, § 60, provides that "[t]he
General Assembly of Maryland shall have the power to
provide by suitable general enactment . . . for the
suspension of sentence by the Court in criminal
cases . . . ." In A. Niles, *Maryland Constitutional Law*
(1915), it is said of this section, which was then proposed to
be acted upon by the voters at the general election of 1915:

"The intent thereby to free from any
constitutional objection such legislation as is
thereby alluded to is clear." *Id.* at 219.

To like effect, *see State v. Fisher*, 204 Md. 307, 315, 104 A. 2d
403 (1954). Code (1957, 1971 Repl. Vol., 1973 Supp.) Art. 27, §
639, originally enacted by Chapter 402 of the Acts of 1894, is
the present general law relative to suspension of sentence. It
follows that if the General Assembly is authorized to
provide by statute for suspension of sentence, then it may
say for what offenses sentence may be suspended; likewise,
sentence may not be suspended other than in the cases for
which it has provided for suspension.

The argument relative to the power of the court to
suspend execution of sentences as in this case, be it based on
common law, inherent power, separation of powers, or any
other theory, aside from constitutional or statutory
authorization, comes down to advocacy of a proposition that
unto the courts and to the courts alone is entrusted the
power to determine what penalty should be inflicted for
violation of any given statute. Under that theory there is no
need to prescribe a minimum penalty or a maximum
penalty, since the discretion would rest in the courts. It
follows under that theory that the provision in Code Art. 27,
§ 643, permitting judges "in lieu of the minimum

penalty . . . prescribed [to] impose a less penalty of the same character; provided, however, that nothing [t]herein contained shall be construed as affecting any maximum penalty fixed by law, or the punishment for any crime where the law provides one and only one penalty" (unchanged in that regard since its enactment by Chapter 563 of the Acts of 1906) is meaningless and an exercise in futility. We are unable to subscribe to that view.

The trial judge here recognized that he was obliged to give a five-year sentence, so he gave it. To hold that he may then suspend a part of a sentence which he gave in direct recognition of the legislative mandate is, in our view, to exalt form above substance. The result in this instance comes down to a sentence of two years, three years less than that prescribed by statute.

Based upon *Ex parte United States, supra;* the holdings of courts of last resort in the vast majority of the states; reason; Constitution, art. III, § 60; and Maryland precedent, we are of the opinion that the General Assembly validly exercised its power when it specified in Code Art. 27, § 36B (e) that "no court [should] enter a judgment for less than the mandatory minimum sentence prescribed in [that] subheading in those cases for which a mandatory minimum sentence [was] specified in [that] subheading" and further specified that "no court [should] suspend a mandatory minimum sentence prescribed in [that] subheading."

## II

### Mandamus

Statements that it is not within our power to issue the writ of mandamus except in aid of our appellate jurisdiction are to be found in *Henson v. State,* 227 Md. 659, 660, 180 A. 2d 300 (1962); *State v. Rutherford,* 145 Md. 363, 369, 125 A. 725 (1922); *Hendrick v. State,* 115 Md. 552, 558-59, 81 A. 18 (1911); and *Sevinskey v. Wagus,* 76 Md. 335, 336, 25 A. 468 (1892), among others. The Supreme Court of the United States took a similar position relative to its jurisdiction in *Chandler v. Judicial Council,* 398 U. S. 74, 86, 90 S. Ct. 1648, 26 L.Ed.2d 100 (1970).

As a general rule the cases in which appellate courts have issued the writ of mandamus to lower courts seem to be where the appellate court is vested by the constitution of its state with superintending control. *See* Annot., 112 A.L.R. 1351 (1938), and 20 Am.Jur.2d *Courts* §§ 111-117 (1965). Relative to "superintending control," *see* B. Elliott & W. Elliott, *Appellate Procedure* § 514 (1892).

.The Maryland cases, other than *Henson*, in which mention has been made of mandamus arose prior to the addition of § 18A to art. IV of the Maryland Constitution in 1944.

We prefer to leave open the question of whether the authority placed in the Chief Judge of the Court of Appeals of Maryland as head of the judicial system of Maryland by § 18A, an authority that did not exist prior to that amendment, is ground for changing the holdings of our predecessors, a point not argued to the Court in *Henson* so far as the opinion discloses.[3]

### III

### Right of Appeal

Schools urges that the appeal in this case was not timely taken since he was sentenced on March 20, 1974, and the appeal was not filed until June 27, more than 30 days later. However, the denial by Judge Shearin of the State's request for correction of the sentence took place on June 4. The State's appeal is from that order. Under Rule 764 a an illegal sentence may be corrected at any time. The same was true under its predecessor rule. *Carter v. Warden*, 210 Md. 657, 659, 124 A. 2d 574 (1956). In *Roberts v. Warden*, 206 Md. 246, 255, 111 A. 2d 597 (1955), Judge Hammond said for the Court that "if [a trial] court refuses to strike out [an illegal] sentence, its refusal . . . constitute[s] action which is appealable to this Court. *Madison v. State*, 205 Md. 425; *Duker v. State*, 162 Md. 546, 549; *Miller v. State*, 135 Md. 379,

---

**3.** *See* the address as President of the Maryland State Bar Association of Judge Morris A. Soper, "Judicial Administration in Maryland," 25 Transactions of Md. St. B. Ass'n 7-8 (1920), for his view that as of that date the Chief Judge of the Court of Appeals was not the head of the judicial system of Maryland.

382; *Dutton v. State,* 123 Md. 373." Therefore, if the State has a right of appeal, the appeal was seasonably filed.

In this case we have the anomalous situation of Schools' suggesting that the State is vested with the right of appeal, while the State is of the view, notwithstanding the fact that it filed an appeal, that it has no right of appeal because of certain changes in the law which we shall hereafter discuss.[4] Since the question of the right of appeal is jurisdictional, we must face it.

Virtually the same situation as that with which we are here presented was before this Court in *State v. Fisher,* 204 Md. 307, 104 A. 2d 403 (1954). There the State appealed from a judgment and suspended sentence to pay a fine of $500 and costs when an individual was convicted of violating certain provisions of the Workmen's Compensation Act. The State contended that the trial court "exceeded its statutory authority in suspending the sentence." Judge Henderson there reviewed the cases and the authorities. He said for the Court:

> "While it was held in [*State v.*] *Adams* [196 Md. 341, 76 A. 2d 575 (1950)] that the granting of a motion to suppress evidence was not reviewable on appeal by the State, Cf. *State v. Barshack,* 197 Md. 543, it was recognized that there is an exception, to the general rule that the State cannot appeal to this

---

**4.** In Biller v. Director, Patuxent Institution, 22 Md. App. 375, 322 A. 2d 899 (1974), the Court of Special Appeals quoted an address by the Honorable Simon E. Sobelof, then Solicitor General of the United States, a former Chief Judge of this Court, to the Judicial Conference of the Fourth Circuit, June 29, 1954, where he said:

"The Solicitor General is not a neutral, he is an advocate for a client whose business is not merely to prevail in the instant case. My client's chief business is not to achieve victory but to establish justice. We are constantly reminded of the now classic words penned by one of my illustrious predecessors, Frederick William Lehmann, that the Government wins its point when justice is done in its courts." *Id.* at 377.

For a similar view, *see* Wells v. Price, 183 Md. 443, 449, 37 A. 2d 888 (1944). It might be argued that in this role the State's Attorney has an obligation to bring to light an improper sentence, whether the error favored the State or the defendant.

Court in a criminal case, in 'cases which were — and still are * * * — reviewable on (or "as on") writ of error, but since 1892 have also been reviewable on appeal in lieu of writ of error, * * *.' " *Id.* at 311.

He then went on to say on behalf of the Court:

"While the State's right to appeal 'as on' writ of error in Maryland has been chiefly recognized in cases where the indictment was quashed, we think the principle has a somewhat wider application, and appeal lies in the circumstances of the instant case." *Id.* at 312.

Rule 1 of this Court then in effect was identical with Code (1951) Art. 5, § 4. They both provided for dispensing with formal writs of error, but stated that a party might apply "to have the record removed, as upon Writ of Error . . . ." The Code provision was repealed by Chapter 399 of the Acts of 1957, which repealed all of Article 5 and enacted a new Article 5. On July 18, 1956, effective January 1, 1957, this Court adopted Maryland Rule 810 providing that writs of error and petitions "to remove the record" were abolished.[5]

The minutes of our Standing Committee on Rules of Practice and Procedure of September 28, 1955, reflect discussion on the proposed redraft of Article 5 and the desire of the subcommittee concerned with that article to obtain "the sense of the committee as a whole upon certain comments made by Anselm Sodaro, State's Attorney for Baltimore City, upon th[o]se proposed sections." They further reflect that a letter from Mr. Sodaro and the proposed sections were distributed to the members. The Sodaro letter suggested that the State should have the right of appeal in a number of situations, including a ruling on a question of law adverse to the State where the defendant was acquitted, without, however, a retrial of the defendant

---

5. It may be well to say, for the benefit of this generation of lawyers, that the common-law writ of error presented to an appellate court for examination "any matter of law apparent upon the face of the record." *See* 2 Poe, Pleading and Practice § 817, at 777 (5th ed. Tiffany 1925).

in such case. The committee rejected those proposals. Pertinent to the discussion here is the statement of Mr. Sodaro (now a Judge of the Supreme Bench of Baltimore City) in his letter:

"In connection with Section 15, entitled 'Right of Appeal by State,' I call your attention to the fact that no reference is made to the existing Rule of law that the State presently has a right to appeal from the imposition of an illegal sentence. (See State vs. Fisher, 204 Md. 307)."

The minutes reflect the following committee action relative to that statement:

"The Committee did not feel that Mr. Sodaro's comment that the State presently has a right to appeal from the imposition of an illegal sentence based on the case of State v. Fisher, 204 Md. 307, required any change in proposed section 15."

The proposed § 15 was identical with § 14 as ultimately enacted by Chapter 399 of the Acts of 1957. Code (1957, 1968 Repl. Vol.) Art. 5, § 14 was in effect immediately prior to January 1, 1974, and thus applicable to this proceeding, which had its genesis prior to that date. That section stated:

"The State may appeal to the Court of Special Appeals from a final order or judgment granting a motion to dismiss, or quashing or dismissing any indictment, information, presentment or inqui-, sition in a criminal action, but the State shall have no right of appeal in any criminal action where the defendant has been tried and acquitted."

Other than the substitution of "Court of Special Appeals" for "Court of Appeals" by Chapter 12 of the Acts of 1966, this provision was unchanged from the time of its enactment in 1957 until its replacement by the new Courts and Judicial Proceedings Article with the enactment of Chapter 2 of the Acts of the First Extraordinary Session of 1973. It thus was in effect in 1964 at the time of State v. Jacob, 234 Md. 452, 199 A. 2d 803 (1964), which we shall discuss later.

Because neither the statute nor the Maryland Rules specifically refer to appeal "as upon Writ of Error," as did both rule and statute when *Fisher* was decided in 1954, it is suggested that this Court is powerless in the face of what we have held was a reaching out by a trial court for power greater than it had. We do not see it that way.

In *Liquor Board v. Handelman,* 212 Md. 152, 161, 129 A. 2d 78 (1957), Chief Judge Brune mentioned Rule 810 and observed that "the views which led to its adoption make it clear that it effected no change in substance in the law as it previously existed with regard to the absence of any real difference between review on appeal and review as on writ of error."

*State v. Jacob,* 234 Md. 452, 199 A. 2d 803 (1964), pertained to an appeal "from an order of the Circuit Court for Anne Arundel County dismissing [the State's] petition for a writ of certiorari by which it sought to have set aside the action of a trial magistrate of that County in placing the appellee on probation without verdict and to have the case remanded to the magistrate for further proceedings." A motion was made by Jacob to dismiss the appeal. The conclusion of Jacob's brief on file in this Court said:

> "It is respectfully submitted that, since the Circuit Court exercised its quasi-appellate jurisdiction and reviewed the proceedings before the State has no right of appeal to this Court in the Writ of Certiorari to this Court, as was done in *Shipley* [*v. State,* 201 Md. 96, 93 A. 2d 67 (1952)], the State has no right of appeal to this Court in the instant case, and that, pursuant to the Appellee's Motion contained herein, the proceedings should be dismissed."

Chief Judge Brune there said for the Court:

> "In these circumstances, we think that the trial court was called upon to act in its capacity as a common law court of original jurisdiction, and not in the exercise of a special, appellate jurisdiction or

even of a quasi-appellate jurisdiction. The case, therefore, appears to us to fall within the rule applied in *State, ex rel. Wilson v. Stafford*, 160 Md. 385, 153 A. 77, and recognized in *Rayner v. State*, 52 Md. 368, at 376-77 (see also Poe, *Pleading and Practice* (Tiffany's Ed.), Vol. 2, § 723 A), rather than within the rule of *Riggs v. Green*, 118 Md. 218, 84 A. 343, and *Shipley v. State*, 201 Md. 96, at 99, 93 A. 2d 67. The line of demarcation between the two types of cases is not always clear and distinct, and the question here is not wholly free of doubt. No question is presented with regard to the jurisdiction of the trial magistrate to try the case; his power to dispose of it by probation without verdict is in issue, and this, we think, presents a question which is essentially one of jurisdiction, rather than of mere irregularity in the proceedings. The existence of a right of appeal does not bar the use of certiorari to test a question of jurisdiction. *Rayner v. State, supra;* and certiorari may be invoked to ascertain whether an inferior tribunal has transcended its limited powers. *Swann v. M. & C. C. of Cumberland*, 8 Gill 150, 155.

"Because we think that the magistrate did exceed his jurisdiction, that the appeal is properly before us, and that the Circuit Court erred in not remanding the case to the trial magistrate for disposition in accordance with the powers conferred upon trial magistrates of Anne Arundel County (Poe, *op. cit. supra*, § 730), we reverse the order of the Circuit Court and remand the case to that Court with directions to remand it to the trial magistrate for further proceedings not inconsistent with this opinion." *Id.* at 457-58.

Art. 5, § 14 specified some instances in which there was a right of appeal by the State. It did not purport to limit the right of appeal. It is conceded that had there been no change in the law in 1957 by the enactment of the then new Article 5 of which § 14 was a part, *Fisher* would be authority for the

right of appeal here. The law which was in effect at the time *Jacob* was decided is to all intents and purposes the law in effect at the time this prosecution began.[6] We thus find that the holding in *Fisher*, considered in light of the language used in *Liquor Board v. Handelman, supra*, and the subsequent holding in *Jacob*, is authority for an appeal from the imposition of an illegal sentence, since the issue of the trial court's jurisdiction is involved in the sense of whether it exceeded the powers vested in it by prescribing a penalty contrary to law. A lower court which thus exceeds its power must be bridled by a court of last resort. Were it otherwise, mandates of the General Assembly could be defied with impunity and the only protection of the public would be the torturous process of judicial removal which would not have the effect of correcting the specific error. Therefore, if there were no right of appeal in this case, we would have no hesitancy in saying that we would act by issuance of the writ of prohibition. *See Kardy v. Shook, J.*, 237 Md. 524, 544, 207 A. 2d 83 (1965).

Upon the remand the trial judge shall delete the improper suspension of sentence so that the handgun violation will be for the mandatory term of five years. Moreover, he shall comply with the requirements of Code (1957, 1971 Repl. Vol., 1973 Cum. Supp.) Art. 27, § 690 and sentence Schools to the jurisdiction of the Department of Correction without an attempt to specify to that Department in what institution the sentence shall be served. Subsection (e) of § 690 makes provision for transfer of "minimum security inmates to county . . . detention facilities" under certain circumstances. Code (1957) Art. 27, § 690A, as added by Chapter 415 of the Acts of 1974, provides that "no prisoner confined to a maximum or medium institution or facility within the jurisdiction of the Division of Correction may be transferred to a minimum security institution or facility . . . or to a local correctional facility or detention

---

6. By virtue of Chapter 2, § 18 of the Acts of the First Extraordinary Session of 1973 we are not obliged to interpret Code (1974) §§ 12-301, 12-302, Courts and Judicial Proceedings Article, as those sections might apply to this case.

center without the participation, evaluation, review, and final approval, in each case, of the classification office of the Division of Correction." It is not the prerogative of the trial judge under existing statutes to direct where Schools may be incarcerated.

*All pending motions denied; Misc. No. 3 dismissed; No. 86 remanded to the Circuit Court for Montgomery County for imposition of a proper sentence; costs in Misc. No. 3 to be paid by Montgomery County; costs in No. 86 to be paid by the defendant.*